IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAYNA WORKMAN | ) | CASE NO. |
| 1230 Broadway Ave | ) | |
| Bedford OH 44146 | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| UNIVERSITY OF AKRON | ) | |
| c/o BDB Agent Co. | ) | **JURY DEMAND ENDORSED** |
| 3800 Embassy Parkway, Suite 300 | ) | **HEREIN** |
| Akron, Ohio 44333 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Dayna Workman, by and through undersigned counsel, as her Complaint against

Defendants, states and aver the following:

**PARTIES & VENUE**

1. Plaintiff Dayna Workman is a resident of the city of Bedford, Cuyahoga County, state of

   Ohio.

2. Defendant University of Akron is a public university in the city of Akron, Summit County,

   state of Ohio.

3. Defendant University of Akron was a federal funding recipient as defined by 20 U.S.C. §

   1681(c).

4. At all times herein, Workman was a student at the University of Akron.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiff is

   alleging a Federal Law Claim under Title IX.

6. All material events alleged in this Complaint occurred in Summit County.



7. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the University of Akron is located and where the material facts in this matter took place.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Personal jurisdiction is proper over Defendants pursuant to Ohio R.C § 2307.382 (A)(1).

10. Venue is proper pursuant to Civ. R. 3(B)(3).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

12. Workman was a Marriage and Family Counseling/Therapy student at the University of Akron from the Spring of 2012 through the Summer of 2015.

13. Workman became pregnant in the Fall of 2013.

14. On or about February 13, 2014, Workman met with Drs. Jordan and Boyle to inform them that she was pregnant.

15. On or about February 13, 2014, Workman informed Drs. Jordan and Boyle that her plan was to take one week off for childbirth and recovery.

16. Drs. Jordan and Boyle insisted that Workman would need to take more than one week off for childbirth and recovery.

17. Drs. Jordan and Boyle insisted that Workman would need to take a second semester of the clinical course.

18. During the February 13, 2014 meeting, Drs. Jordan and Boyle indicated that they were skeptical about the ability of a pregnant woman to fully participate in the program.

The Employee's Attorney.™



19. After the February 13 2014 meeting, Workman also attempted to discuss internships with Drs. Jordan and Boyle.

20. Dr. Boyle made it clear that she was not interested in advising Workman on internships or the internship process.

21. Workman was offered a paid internship without the assistance of Dr. Boyle or Dr. Jordan.

22. Dr. Jordan denied Workman's internship site under the pretext that Workman's Professional Clinical Counselor Supervisor would be off site.

23. The Counseling/Social Work Board approved Workman's request for the same internship site.

24. Dr. Jordan excluded Workman from participation in the internship program because Workman was pregnant.

25. Drs. Boyle and Katafiasz explicitly stated that Workman was being excluded from participation in the clinical course because of her pregnancy.

26. Drs. Boyle and Katafiasz told Workman that she was not being given clients because "it was unfair to the clients because of [her] pregnancy."

27. Workman repeatedly requested more clients so that she could participate in the clinical course, but the clients were given to the students that were not pregnant.

28. Workman was only given 3 clients the entire summer 2014 semester, which allowed her to get only 11.5 of the 40 hours needed for the program.

29. Even after Workman returned from giving birth, after being out for only a week as promised, Drs. Boyle and Katafiasz continued to deny Workman clinical hours, giving her only three more hours for the remainder of the semester.

The Employee's Attorney.™



30. Because Drs. Boyle and Katafiasz excluded Workman from participation in the clinical course, Workman did not get the hours needed to complete the clinical portion of her program in the summer of 2014.

31. At least one other student was absent for a week due to illness during the summer of 2014, and that student was given enough clients and/or hours to complete the clinical course.

32. Workman was the only student who not given enough hours to complete the clinical course that semester.

33. Workman was the only student who had been pregnant during the practicum portion of the program.

34. Workman continued to be deprived of clients and/or hours through the fall of 2014.

35. Workman was not able to give her full attention to studying for comps during the Fall of 2014, as she was required to continue with her clinical course, and fight for clients and/or hours, at the same time.

36. Workman did not pass one part of her first Comprehensive exam, the CPCE.

37. Dr. Jordan did not help Workman with a remediation plan to help ensure success on the next exam.

38. When Workman took the CPCE again in the spring of 2015 she failed again by 3 or 4 points.

39. On July 13, 2015 Workman was given the CPCE orally by five examiners, including Drs. Jordan and Boyle.

40. The inclusion of Drs. Jordan and Boyle made Workman uncomfortable.

41. Drs. Jordan and Boyle determined that Workman failed the oral exam.

42. When Workman failed the oral exam on July 13, 2015, she was dismissed from the program.

The Employee's Attorney.™



43. Workman complained about the systemic gender and pregnancy discrimination in the school of Counseling at the University to the Dean, Dr. Gordon.

44. Workman's complaint to Dr. Gordon gave him notice and knowledge of the discrimination.

45. Dr. Gordon was deliberately indifferent to Workman's complaint.

46. When Workman pointed out to Dr. Gordon that pregnancy was not addressed in the student handbook, to Dr. Gordon replied "we can't cover everything."

47. When Workman was dismissed from the program she was told that she had a chance for readmission in a year.

48. Along with this chance came a threat: if she complained about the pregnancy discrimination she would not be readmitted.

49. Workman filed a formal complaint against Drs. Jordan and Boyle on Tuesday, September 29, 2015.

50. On November 30, 2015, the EEO office concluded their investigation and found no violation of the University of Akron's Affirmative Action Policy or Sexual Harassment Policy by Drs. Jordan and Boyle.

## COUNT I: VIOLATION OF TITLE IX

51. Workman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

52. Workman is female.

53. Workman informed Defendant of her pregnancy on February 13, 2014.

54. The internship program is an educational program operated by a recipient of federal financial assistance.

55. The internship program is a covered education program under Section 504.



56. Workman was denied participation in the internship program because she was pregnant.

57. Workman was enrolled in a clinical course at the University of Akron.

58. The clinical course is an educational program operated by a recipient of federal financial assistance.

59. The clinical course is a covered education program under Section 504.

60. Workman was not assigned clients and/or hours in the clinical course because she was pregnant.

61. Clients were assigned to students that were not pregnant.

62. Workman was unable to complete the practicum in the summer of 2014 because she was not assigned clients and/or hours.

63. Workman was removed from the Marriage and Family Counseling/Therapy program because of her pregnancy.

64. Workman notified the Dean, Dr. Gordon of the discriminatory actions.

65. Dr. Gordon failed to redress the gender discrimination.

66. Defendant discriminated against Workman in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* and 34 C.F.R. § 106.40(b)(2) and (b)(5).

67. As a direct and proximate result of Defendants' conduct, Workman suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff prays that this honorable Court enter an order::

(a)  Declaring that Defendant violated Plaintiff's rights under the Title IX as set forth herein; and

The Employee's Attorney.™



(b) Granting Judgment in favor of Plaintiff on all counts, including an award of all damages available to her under the law and as set forth herein, plus costs and attorney's fees under 42 U.S.C. Section 1988, and other applicable statutes; and

(c) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Claire I. Wade (0093174)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: claire.wade@SpitzLawFirm.com

*Attorney For Plaintiff Dayna Workman*

The Employee's Attorney.™



## <u>JURY DEMAND</u>

Plaintiff Dayna Workman demands a trial by jury by the maximum number of jurors permitted.

_(signature)_

_____
Claire I. Wade

8

