# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DAYNA WORKMAN, | ) | CASE NO. 5:16-cv-156 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| UNIVERSITY OF AKRON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant University of Akron ("UA") for summary judgment pursuant to Fed. R. Civ. P. 56 on the claims of plaintiff Dayna Workman ("Workman") in this Title IX case. (Doc. No. 44 ["Mot."].) Workman opposes the motion (Doc. No. 53 ["Opp'n"]), and UA has filed a reply (Doc. No. 54 ["Reply"]). For the reasons that follow, UA's motion is granted.

## I. BACKGROUND

Many of the background facts of this case are undisputed. Workman enrolled as a mater's student in UA's Marriage and Family Counseling/Therapy Master's Program ("Program") in the spring of 2012. (Doc. No. 46-1 (Deposition of Dayna Workman ["Workman Dep."]) at 1789.[1]) The Program generally consists of four components: (1) classroom coursework, (2) pre-practicum field experience, (3) clinical requirements (practicum and internship courses), and (4) passage of the Counselor Preparation Comprehensive Examination ("CPCE") within three attempts. (*See*

---

[1] All page number references are to the page identification number generated by the Court's electronic filing system.

Doc. No. 44-3 (Declaration of Rebecca Boyle ["Boyle Dec."]) ¶ 9; Doc. No. 44-2 (Declaration of Karin Jordan ["Jordan Dec."]) ¶ 9.)

Workman became pregnant in the fall of 2013. She told Jordan[2] and Boyle[3] in February 2014 that she was expecting a child that summer, but would be absent for only one week, and would continue with her plan to take the Program's practicum course in summer 2014. Workman claims that Jordan and Boyle were skeptical that she would only be absent for one week after childbirth, and indicated that if she needed to be absent more than one week, it may take two semesters to complete the hourly requirements of the practicum course. (Workman Dep. 1825-26.) Workman decided to proceed with her practicum in summer 2014 as planned, instead of deferring her practicum until fall 2014.

According to Workman, Jordan and Boyle believed that a pregnant woman could not succeed in the Program and set about ensuring that outcome. This allegation forms the basis of Workman's Title IX claims. Specifically, Workman alleges that as a consequence of discrimination by Boyle and Jordan, (1) she did not receive sufficient clients to obtain the required number of clinical hours for her practicum course in summer 2014 even though she was absent only one week for childbirth, (2) she was denied an internship assignment, and (3) she failed three attempts to pass the CPCE. (Doc. No. 1 (Complaint ["Compl."]) ¶¶ 36-41.) When Workman failed her competency examination for the third time in July 2015, she was dismissed from the Program. (*Id*. ¶ 42.) Workman attributes her dismissal to pregnancy discrimination in violation of Title IX, and she alleges that UA was deliberately indifferent to her discrimination claims. (*Id*. ¶¶ 45, 63.)

---

[2] From 2014-2016, Jordan was the Interim Associate Dean of defendant's College of Health Professions. Prior to 2014, Jordan was the Chair of the Department of Counseling. (Jordan Dec. ¶¶ 3, 5.)

[3] Boyle has served as the Clinic Director for UA's clinic for Individual and Family Counseling since 2013. (Boyle Dec. ¶ 3.)

UA contends that it is entitled to summary judgment on Workman's Title IX claims because it is undisputed that: (1) she did not complete the required number of clinical hours during the summer 2014 practicum for reasons other than pregnancy discrimination; (2) she received and completed a Program internship assignment; and (3) she was dismissed because she failed to satisfy a Program requirement of passing her competency examination in three attempts.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. It is the nonmoving party's duty to point out specific facts in the record that create a genuine issue of material fact; the trial court does not have a duty to search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034

(D.C. Cir. 1988)); *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted).

The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.*, 536 F. App'x. 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street*, 886 F.2d at 1477 (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. That is, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> [Summary judgment is required] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

## B. Title IX—discrimination

Workman alleges pregnancy discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.,* ("Title IX"), which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The discrimination prohibited by Title IX includes discrimination related to pregnancy. Federal regulations prohibit a recipient of federal funds from discriminating against any student, or excluding any student from its education programs or activities, "on the basis of such student's pregnancy, childbirth, false pregnancy, termination of pregnancy or recovery therefrom[.]" 34 C.F.R. § 106.40(b)(1).

Title IX claims by students against a university are analyzed by applying the Title VII standard for proving discriminatory treatment. *See Ivan v. Kent State Univ.,* No. 94-4090, 1996 WL 422496, at *2 (6th Cir. July 26, 1996) (collecting cases); *Nelson v. Christian Bros. Univ.*, 226 F. App'x 448, 454 (6th Cir. 2007) ("Generally, courts have looked to Title VII, 42 U.S.C. §§ 2000e, as an analog for the legal standards in both Title IX discrimination and retaliation claims.") (collecting cases). Title IX claims can be established by both direct and circumstantial evidence. Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the [defendant's] actions." *Jacklyn v. Schering-*

*Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (Title VII) (citations omitted); *Gordon v. Traverse City Area Pub. Sch.*, 182 F. Supp. 3d 715, 724-25 (W.D. Mich. 2016) (Title IX retaliation) (citing *Jacklyn, supra.*)), *aff'd,* 686 F. App'x 315 (6th Cir. 2017).

Workman may also establish a Title IX discrimination claim by circumstantial evidence. Circumstantial evidence is evidence which permits an inference of discrimination,[4] and is analyzed utilizing the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)/*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) burden-shifting framework. *See Gordon*, 182 F. Supp. 3d at 725; *McConaughy v. Univ. of Cincinnati*, No. 1:08-cv-320-HJW, 2011 WL 1459292, at *8 (S.D. Ohio Apr. 15, 2011) (citing, among authority, *Ivan,* 1996 WL 422496, at *2) (further citation omitted). Under this framework, the burden is first upon plaintiff to establish a prima facie case. If plaintiff meets this burden, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for its adverse treatment of plaintiff. Once defendant does so, the burden shifts back to plaintiff to demonstrate that defendant's articulated reason is a pretext for discrimination.

Workman's opposition to UA's motion focuses entirely on the *McDonnell Douglas/Burdine* burden-shifting framework for establishing a Title IX claim. Thus, it appears that Workman concedes that she has no direct evidence of pregnancy discrimination, and the Court will limit its analysis accordingly.

---

[4] Under Title VII, a plaintiff may demonstrate discrimination by circumstantial evidence in one of two ways: (1) presenting circumstantial evidence that permits an inference of discrimination; or (2) showing that both legitimate and illegitimate reasons motivated the adverse employment decision. The latter category is sometimes referred to as a "mixed-motive" case. *See Cummings v. Motel 6 Operating L.P.*, No. CIV.A. 07-145-KSF, 2008 WL 2475735, at *2 (E.D. Ky. June 18, 2008) (citing *Johnson v. Kroger Co.,* 319 F.3d 858, 864-65 (6th Cir. 2003)). Workman does not argue here that this is a mixed-motive case.

### 1. Prima facie case

The parties agree that, to establish a prima facie violation of Title IX, Workman must show that: (1) she was a member of a protected class; (2) she was performing the academic requirements at a level sufficient to meet her educator's legitimate expectations; (3) she suffered adverse treatment; and (4) the educational program continued to instruct and credit other students. (Mot. at 290; Opp'n at 2993 (both citing *McConaughy*, 2011 WL 1459292, at *8 and *Darian v. Univ. of Massachusetts*, 890 F. Supp. 77, 91 (D. Mass. 1997) (citing *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988)).) Another district court in the Sixth Circuit, however, has declined to follow the prima facie framework of *Darian*, reasoning that the Sixth Circuit applies framework of *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651 (6th Cir. 2000) to pregnancy discrimination claims under Title VII and, because Title IX claims are analyzed under the same legal framework as Title VII claims, the prima facie analysis of *Cline*, not *Darian*, applies to Title IX pregnancy discrimination claims. *Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 856 (E.D. Mich. 2012); *see also Jordan v. Henderson*, 229 F.3d 1152 (6th Cir. 2000) (Table) (citing *Cline* framework to establish pretext in Title VII pregnancy discrimination case). A recent Sixth Circuit decision confirms that *Cline* is the appropriate prima facie framework to apply to Title IX pregnancy discrimination claims. *Kubik v. Cent. Mich. Univ. Bd. of Tr., et al.,* No. 16-2783, 2017 WL 5900644, at * 3 (6th Cir. Nov. 30, 2017) (citing *Cline*, 206 F.3d at 658).

While the first three elements of a prima facie case under *Cline* are the same as the *Darian* framework, the fourth element is not. Under *Cline*, the fourth element is the existence of a nexus between the pregnancy and the alleged adverse treatment. *Id*. (citing *Cline*, 206 F.3d at 658). The fourth factor under either framework, however, is not dispositive of the Court's prima facie

analysis. Thus, even though the parties did not brief *Cline* as the applicable prima facie framework, the Court's analysis would be the same.

UA contends on summary judgment that there is no genuine dispute of material fact that Workman cannot establish the second and third factors of a prima facie case of pregnancy discrimination under Title IX because she cannot show: (1) that she was performing the academic requirements of the Program; or (2) that she suffered adverse treatment prior to being dismissed from the Program. (Mot. at 291-92).

Given the undisputed facts in this case as discussed below, including that Workman failed her competency examination three times (passage of which was required by the Program), the Court finds it unlikely that Workman can successfully carry her burden on summary judgment to establish a prima facie case of pregnancy discrimination. That said, the requirements for making out a prima facie case of Title VII discrimination are "not onerous," but "a burden easily met." *Cline*, 206 F.3d at 660 (quotation marks and citations omitted). Thus, the Court will assume for the purpose of this analysis (and in the interest of judicial efficiency), that Workman has satisfied her burden on summary judgment to establish a prima facie case.

### 2. Legitimate nondiscriminatory reason

In the next phase of the *McDonnell Douglas/Burdine* analysis, the burden shifts to UA to articulate a legitimate, non-discriminatory reason for its actions. Regarding Workman's allegations of pregnancy discrimination with respect to her Program internship, UA points out that she fully participated in an internship at Catholic Charities. With respect to Workman's contention that she was "denied" an internship at her preferred site, the McKeon Education Group ("McKeon"), UA points out that Workman's internship at McKeon was conditional, not because of Workman's pregnancy, but because McKeon lacked an on-site supervisor. (Mot. at 293.)

With respect to Workman's claim that she could not successfully complete the summer 2014 practicum because UA deprived her of clients as a consequence of her pregnancy, UA maintains that she was assigned available clients in the same manner as her classmates and consistent with the ethical rules that govern the profession regarding client continuity of care when an absence is anticipated. Moreover, UA points out that Workman successfully completed her practicum in fall 2014, and moved ahead to the internship phase of the Program. (*Id*. at 293-94.)

Finally, as to Workman's claim that she was dismissed from the Program in 2015 because of her pregnancy in 2014, UA states that Workman was dismissed because she failed three attempts to pass her comprehensive examination. To the extent Workman claims that she would have passed the oral examination (which followed two failures to pass the written examination) if Boyle and Jordan were not included on the panel, UA points out that the three other Program faculty on the oral examination panel independently gave Workman a failing grade. (*Id*. at 294.)

In her opposition, Workman does not contend that UA failed to satisfy its burden to articulate a legitimate non-discriminatory reason under the *McDonnell Douglas/Burdine* burden shifting analysis. (*See* Opp'n at 2995.) Thus, the burden shifts back to Workman to advance evidence which creates a genuine issue of material fact with respect to whether UA's articulated reasons are a pretext for unlawful discrimination.

### 3. Pretext

In order to survive summary judgment at this phase of the analysis, Workman must advance evidence showing that there is a genuine issue of material fact that pregnancy discrimination, not UA's articulated reasons, is the real reason for its actions. Workman can do this by showing that UA's reasons: (1) have no basis in fact; (2) did not motivate UA's actions; or (3) were insufficient to motivate UA's actions. *See Suits v. The Heil Co.*, 192 F. App'x 399, 405 (6th Cir. 2006) (Title

VII pregnancy discrimination) (citing *Manzer v. Diamond Shamrock Chems, Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)). "These three categories are simply a 'convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the [defendant dismiss plaintiff] for the stated reason or not?'" *Koch v. Lightning Transp., LLC*, No. 3:13-0225, 2015 WL 66971, at *4 (M.D. Tenn. Jan. 6, 2015) (Title VII pregnancy discrimination) (quoting *Tingle v. Arbors at Hilliard,* 692 F.3d 523, 530 (6th Cir. 2012)).

In order to show UA's proffered reasons have no basis in fact, Workman must produce evidence from which a reasonable jury could conclude that those reasons are factually false. To establish pretext with respect to the second category, Workman must advance evidence that calls UA's credibility into question because the evidence tends to show that pregnancy discrimination was the more likely explanation for UA's actions than the articulated reasons. Finally, Workman may also establish pretext by producing evidence that shows other Program students who engaged in substantially the same conduct, but were not pregnant, did not suffer the same adverse treatment. *See McConaughy*, No. 1:08-cv-320, 2010 WL 6511141, at *11 (citing *Manzer,* 29 F.3d at 1082) (S.D. Ohio Sept. 28, 2010)), *report and recommendation adopted,* 2011 WL 1459292. Workman fails to establish pretext under any of these three considerations.

### *Clinical requirements—practicum*

There is no dispute that Workman did not obtain the required number of clinical hours during her summer 2014 practicum and had to take the practicum again in fall 2014 in order to complete the requirements.[5] Workman claims that she was unable to successfully complete the

---

[5] Practicum students have a set time and number of hours that they are in the clinic to see clients, referred to as "block" hours. The students select their own block hours, and Workman selected Saturday. (Workman Dep. at 1853.) Practicum students are required to obtain 40 clinical hours to satisfy the practicum requirements, 20 hours of which may be group hours, which are easier to obtain than individual "relational" hours. (Katafiasz Dec. ¶¶ 12-13.)

practicum in summer 2014 because Jordan and Boyle did not give her clients before the birth of her child and after her return, while all of the other students in the summer 2014 practicum who were not pregnant received more clients than she did and successfully completed the practicum. UA contends that it is entitled to summary judgment because Workman was assigned clients in the same manner as other practicum students but nevertheless did not complete the required number of hours, and she can advance no evidence from which a reasonable jury could concluded that the real reason she failed to complete the summer practicum is because of discrimination by Jordan and Boyle. The Court agrees.

Boyle, the clinic director, met with Workman and her classmates regarding the practicum and internship components of the Program. (Workman Dep. at 1804; Jordan Dec. ¶ 11; Boyle Dec. ¶ 11.) Boyle advised all of them that it can be more difficult to obtain the required number of client contact hours during summer semester than during fall semester because the fall term is a longer semester, and more clients seek treatment at the clinic during fall semester. (Boyle Dec. ¶¶ 11, 15; Workman Dep. at 1828-29.) Practicum students are assigned clients, not hours, in the clinic. UA cannot control how many clients come to the clinic for counseling, for what type of counseling, or whether clients will even appear for their appointments and, thus, cannot guarantee the number of clinical hours available to practicum students. (Boyle Dec. ¶ 15; Doc. No. 44-19 at 455; Workman Dep. at 1855-56, 1866, 1974-75, 1996.) These facts are not disputed by Workman.

Student absences are a factor in assigning clients to practicum students. Consistent with the ethical obligations governing marriage and family therapists and counselors (including student clinicians), students are generally not assigned new clients during the three-week period before the end of a semester in order to ensure that student clinicians have time to develop relationships with their clients and clients do not feel "abandoned" shortly after treatment begins. For the same

11

reasons, student clinicians with planned absences during a practicum are not assigned new clients for a period of time before the absence. (Jordan Dec. ¶ 16; Boyle Dec. ¶ 24; Doc. No. 44-4 (Declaration of Heather Katafiasz ["Katafiasz Dec."]) ¶ 27; Workman Dep. at 1798-1801, 1830-31, 1860, 1906-07, 1951; *see* Doc. No. 44-10 (Marriage and Family Counseling/Therapy— Master's Degree Handbook ["MFC/T Master's Handbook"]) at 365.) Katafiasz[6] explained to Workman that she would not be assigned new clients approximately two weeks before her anticipated due date because of concerns regarding client abandonment. (Katafiasz Dec. ¶ 27; Workman Dep. at 1857-58.) Workman does not dispute, and indeed agrees, that abandonment is unfair to clients and, as a student counselor in the Program, she was required to adhere to the ethical requirements of the American Association of Marriage and Family Therapists. (Workman Dep. at 1798-1801, 1830-31, 1860, 1906-07, 1951.)

But Workman nonetheless contends that "abandonment" is simply a pretext for pregnancy discrimination because "in the past, [UA] did not intentionally stop assigning patients to students in the practicum when they knew an absence may occur or if the student had an unexpected absence. . . . When other students had a planned an absence for things such as a wedding or other life events they were allowed to reschedule clients and work around the planned absence to ensure that the student was able to complete all of their clinical hours for the practicum." (Opp'n at 2987.) In support, Workman cites the deposition testimony of Jordan and Boyle. But the cited testimony does not support her argument.

Workman has no knowledge of how many clients came to the clinic during summer 2014, how many clients the other five students in her practicum course received, or if any of them

<hr />

[6] Katafiasz has served as a professor in various departments, and is familiar with the requirements of the Program. (Katafiasz Dec. ¶¶ 3-5.) She taught Workman's practicum course in summer and fall 2014. (*Id.* ¶¶ 22-23.)

received more clients than she did. (Workman Dep. at 1855-56.) She does not rebut the evidence offered by UA that during the summer 2014 semester, there were a total of forty-one students in eight practicum courses seeking client hours; of those forty-one, twelve were Program students and eight were doctoral students. In total, 147 clients were assigned to the forty-one practicum students during the summer 2014 semester. (Boyle Dec. ¶ 42.)

Regarding her own client assignments, Workman does not know when she stopped receiving new clients before her child was born or how many clients came to the clinic, if any, during that period. (Workman Dep. at 1855, 1866, 1972.) More importantly, Workman offers no evidence to rebut or dispute the evidence advanced by UA that before she was absent for the birth of her child, she had the approximately the same number of relational client hours as three of her classmates, and more than the other two. (Katafiasz Dec. ¶ 28; Mot. at 281 (citing record).)

Workman also claims she was discriminated against because she did not receive as many clients as the other students in the practicum after she returned from childbirth. But Workman does not know how many clients were even available during that time period. Nor does she dispute UA's evidence that during the period between her return to the clinic and the end of the semester, there were three clients available to be assigned and one of those clients was assigned to her. (Boyle Dec. ¶ 47; Katafiasz Dec. ¶ 29; Workman Dep. at 1858, 1975.)

The foundation of Workman's discrimination claim concerning the summer 2014 practicum is that she "was the only student to not get enough hours during her first practicum" and that UA "ensured that all other students were accommodated and given what they needed to succeed." (Opp'n at 2995; Workman Dep. at 1976.) While Workman makes this argument in opposing the motion, it is belied by her own testimony. She acknowledges that two other students were also retaking the practicum in the fall 2014 semester. (Workman Dep. at 1875-76.)

Moreover, Workman was not treated less favorably than the other students retaking the practicum in fall 2014. When she did not obtain the required number of clinical hours in summer 2014, she was given an "in progress" grade, permitted to carry over her summer clinical hours to the fall 2014 semester, and permitted to complete her practicum in fall 2014 with no additional tuition charge. One of the students also retaking the practicum in fall 2014 (who did not have a medical excuse) was given a failing grade, not permitted to carry over summer clinical hours to the fall 2014 semester, and not permitted to retake the practicum at no charge. (Katafiasz Dec. ¶ 34; Workman Dep. at 1875-77.) The third student was retaking the practicum due to a medical excuse and, like Workman, was permitted to transfer summer 2014 clinical hours to the fall semester and not charged fall tuition. (Katafiasz Dec. ¶ 34.)

As the non-moving party, Workman has an affirmative duty to point to specific facts in the record which create a genuine issue of material fact from which a reasonable jury could conclude that she did not complete her practicum hours in summer 2014 as a consequence of unlawful discrimination in violation of Title IX. *Fulson*, 801 F. Supp. at 4. Here, UA has advanced evidence that Workman was (1) assigned clients in the same manner as other students in the summer 2014 practicum who were not pregnant, (2) not the only student who failed to obtain the required number of hours during their first practicum semester, and (3) was not treated less favorably that other students taking a second practicum semester. Workman has not rebutted this evidence with specific

facts in the record showing a genuine dispute of fact, but with conclusory and unsupported assumptions,[7] which are insufficient to withstand summary judgment in the face of a properly supported motion. *See Wade v. Knoxville Util. Bd.,* 259 F.3d 452, 463 (6th Cir. 2001) ("[C]onclusory allegations and [the plaintiff's] perceptions . . . are not sufficient to stave off summary judgment.") (quoting, with favor, the district court opinion); *Marshall v. Decatur Cnty. Gen. Hosp.*, 698 F. Supp. 2d 1009, 10115 (W.D. Tenn. 2010) (citations omitted).

Accordingly, the Court concludes that there are no genuine factual issues concerning pretext that must be resolved by a factfinder because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Thus, UA is entitled to summary judgment on Workman's Title IX claim regarding her practicum.

### *Clinical requirements—internship*

In addition to the practicum, Program students must complete an internship. The Program has pre-approved internship sites that meet accreditation and Program requirements, one of which is that the internship site have a licensed supervisor on site. Program students, however, are not limited to pre-approved sites and may seek approval to intern at other sites which satisfy the Program's requirements. (Jordan Dec. ¶ 21; Boyle Dec. ¶¶ 25-26; Doc. No. 44-20 (Marriage and Family Therapy/Counseling Program—Masters Internship Handbook ["Program Internship Handbook"] at 528 (section A ("Responsibilities of the Cooperating Agency/Site Supervisor").)

---

[7] Workman Dep. at 1996:

> Q So all five students in your class got more
> clients than you?
> A From my understanding, yes.
> Q How do you know that?
> A Because they received their hours.
> Q So you're assuming that, right?
> A Yes.

It is undisputed that Workman completed her Program internship with Catholic Charities, which is a pre-approved site. (Workman Dep. at 1910-11.) But Workman claims that UA denied her participation in a paid internship at McKeon because of her pregnancy.

McKeon was not a pre-approved site. (Boyle Dec. ¶ 30.) After investigating McKeon at Workman's request, Boyle determined that McKeon met Program requirements, except for the requirement that the internship supervisor be located in the same building as the student intern. (Boyle Dec. ¶¶ 36-37; Workman Dep. at 1845.) There is no dispute that at McKeon, Workman and her internship supervisor would not be in the same building. (Workman Dep. at 1832-35.) As Workman understood it, the Program previously permitted students to intern at sites where a supervisor was not present, but a problem had resulted and such internships were no longer permitted for liability reasons.[8] (*Id*. at 1834, 1837-38.)

Workman has advanced no evidence that the requirement of an on-site internship supervisor was not, in fact, a Program policy. Nor does she offer any evidence that another student was permitted to intern at a location without an on-site supervisor, while she was not. Moreover, the issue with McKeon's internship supervisor did not prevent Workman from completing her Program internship requirement as there is no dispute that she successfully completed her internship at Catholic Charities.

Workman's unsupported self-serving testimony to the contrary is insufficient to establish a genuine dispute of material fact on summary judgment. *Hollis v. Ply-Trim, Inc.*, No.

---

[8] Workman contacted the state licensing board for marriage and family therapists and counselors in Ohio, and was told that the board would permit an internship with an off-site supervisor. There is no dispute, however, that the board's "approval" was contingent upon the agreement of the internship site and the university to such an arrangement. (Workman Dep. at 1843.)

4:08CV2491, 2010 WL 11401633, at *8 (N.D. Ohio Jan. 6, 2010) (citing, among authority, *Brooks v. American Broadcasting Companies, Inc.,* 999 F.2d 167, 172 (6th Cir. 1993)). She has advanced no evidence from which a reasonably jury could conclude that UA's stated reason for conditioning an internship at McKeon upon the availability of an on-site supervisor was a pretext for pregnancy discrimination in violation of Title IX. Thus, UA is entitled to summary judgment on Workman's Title IX claim with respect to her internship.

### Comprehensive examinations

There is no dispute that Program students must pass the CPCE in order to remain in the Program. Workman does not dispute that she did not pass her competency examination in three attempts, but contends that she failed because of pregnancy discrimination by Jordan and Boyle, and that is the real reason for her dismissal from the Program.

The CPCE is given once a semester. A student has two opportunities to pass the written test. If a student fails to pass the CPCE after two attempts, she will be administered an oral comprehensive examination. Workman understood that if a student fails the written CPCE twice and fails the oral exam, the student is dismissed from the Program. (Jordan Dec. ¶¶ 9, 17-19; Workman Dep. at 1927-28; Doc. No. 44-11.)

### October 2014 CPCE

Because Boyle and Jordan allegedly discriminated against her in the summer 2014 practicum with respect to client assignments, Workman argues that she was forced to continue her practicum in fall 2014. According to Workman, she worried about having to complete her practicum hours and study for the CPCE at the same time, which she implies caused her to perform poorly on the examination. Yet, Workman ultimately admits that she does not know why she did not pass the CPCE on her first attempt. (Workman Dep. at 1901.)

17

As an initial matter, having found that UA is entitled to summary judgment on Workman's Title IX claim regarding her summer 2014 practicum, UA is also entitled to summary judgment on the claimed ripple effect of that alleged discrimination. Furthermore, there is no evidence that UA's alleged discrimination in summer 2014 placed Workman in a different position than other Program students. There is no dispute that Workman was not the only Program student studying for the CPCE and taking the fall 2014 practicum at the same time. And some of those students (unlike Workman who brought carry-over clinical hours to the fall practicum) were attempting to obtain *all* of their clinical practicum hours while preparing for the CPCE. (Workman Dep. 1898-99; *see also* Katafiasz Dec. ¶ 43 ("Because it is standard for MFC/T masters students to take the CPCE in the same semester as Practicum, all students face the same challenges, including balancing the clinical course, meeting with clients and studying for the exam.").)

*March 2015 CPCE*

Workman successfully completed her practicum in the fall 2014 semester, began her internship in the spring 2015 semester, and took the CPCE for the second time in March 2015. Workman claims that she sought help from Boyle, but was "denied" assistance in preparing for her second attempt at the CMPCE. (Opp'n at 2989, citing Workman Dep. at 1900 (referring to meeting with Jordan regarding October CPCE).) The evidence cited by Workman, however, does not support this argument. Indeed, Workman testified that she did not ask Jordan for any accommodation to help her take either the written or oral examinations. (Workman Dep. at 1925.)

Workman did not pass her second attempt at the CPCE in March 2015. She testified that she was "anxious" about the second test, and does not know why she did not pass. (*Id*. at 1915-16; 1924-25.)

Because she failed two written attempts to pass the CPCE, Workman was administered an oral examination by all five of the Marriage and Family Counseling/Therapy faculty in July 2015. Workman contacted Katafiasz for help in preparing for the oral exam, and Katafiasz responded. (*Id*. at 1944.)

But Workman did not pass the oral examination. She does not dispute that all five Program faculty members independently scored her performance, or that each faculty member separately concluded that she did not pass the exam. (Jordan Dec. ¶¶ 31-35; Boyle Dec. ¶¶ 54-59; Katafiasz Dec. ¶¶ 48-52; Doc. No. 44-5 (Declaration of David Tefteller ["Tefteller Dec."]) ¶¶ 11-15; Doc. No. 44-6 (Declaration of Rikki Patton ["Patton Dec."]) ¶¶ 9-12.)

Workman implies that she failed the oral exam because Jordan and Boyle were on the panel, and claims she would have "felt more comfortable" if they were not present. (Workman Dep. at 1997.) But she offers no evidence that their presence on the panel was improper or that they asserted any improper influence over the other three faculty members on the panel.

Workman claims that Jordan and Boyle gave her a failing grade on the oral exam because she was absent a week during the summer 2014 practicum for the birth of her child (Workman Dep. at 1949), but she makes no such argument with respect to Katafiasz, Tefteller,[9] and Patton, or offer any evidence to support her assertion that the panel was "biased" (Opp'n at 2989). Indeed, Workman does not dispute that one of the faculty members on the panel who gave her a failing grade was unaware of her pregnancy in 2014, and offers no evidence that his assessment of her performance was anything but independent. (Tefteller Dec. ¶¶ 15, 18.)

---

[9] David Tefteller is an assistant professor in the Program, and plaintiff took his internship course in spring and summer 2015.

Finally, Workman implies that she failed the oral examination because Jordan compiled the questions for the test. (Opp'n at 2995.) But Workman does not dispute that the questions Jordan compiled from other faculty members for the oral test addressed the same eight core competency areas covered by the written CPCE (*see* Jordan Dec. ¶ 18; Tefteller Dec. ¶ 11; Katafiasz Dec. ¶ 48). Nor does she advance any evidence that the questions were unfair, inappropriate, or otherwise improperly tainted by Jordan's alleged discrimination against her because of her pregnancy.

With respect to her dismissal from the Program after the third failure, Workman has offered no evidence that passing the test in three attempts was not a Program requirement or a legitimate expectation of defendant for continuation in the Program. There are no disputed facts from which a reasonable jury could conclude that defendant's stated reason for dismissing Workman from the Program—failing to pass the CPCE after three attempts—was a pretext for Title IX pregnancy discrimination. *See McConaughy*, 2011 WL 1459292, at *10 (Universities have legitimate educational reasons for expecting students to complete program requirements and Title IX does not prohibit a university from failing a pregnant student who does satisfy those requirements.) (citing *Se. Cmty. Coll. v. Davis,* 442 U.S. 397, 413, 99 S. Ct. 2361, 60 L. Ed. 2d 980 (1979)). Accordingly, UA is entitled to summary judgment on Workman's claim that she was dismissed from the Program in violation of Title IX.

## C. Title IX—Deliberate Indifference

After failing her oral examination, Workman complained to Dr. David Gordon ("Gordon"), the Dean of the College of Health Professions at the University of Akron,[10] regarding "systemic"

---

[10] *See* Doc. No. 44-7 (Declaration of David Gordon, M.D. ["Gordon Dec."]) ¶ 3.)

gender and pregnancy discrimination in the Program. (Compl. ¶ 43.) She claims that, in violation of Title IX, Gordon was deliberately indifferent to her complaint. (*See id*. ¶¶ 45, 65.)

To establish deliberate indifference under Title IX, Workman must demonstrate that an official with authority to institute corrective measures with actual notice of the alleged discrimination was deliberately indifferent to the discrimination. *See Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003) (citing *See Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)). Title IX, however, does not afford a claimant the right "to make particular remedial demands." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S. Ct. 1661, 1674, 143 L. Ed. 2d 839 (1999).

UA contends that the law in the Sixth Circuit is unsettled as to whether sexual harassment is a "critical component" of a Title IX deliberate indifference claim and, if it is, Workman does not allege that she was sexually harassed, complained of sexual harassment, or that UA ignored her complaints of sexual harassment. (Mot. at 296, citing *Sahm v. Miami Univ.*, No. 1:14-cv-698, 2015 WL 93631(S.D. Ohio Jan. 7, 2015).) *See also Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1068 (S.D. Ohio 2017) (citing *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757–58 (E.D. Tenn. 2009) (limiting deliberate indifference to sexual harassment cases), *but see Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751-52 n.2 (S.D. Ohio 2014) (deliberate indifference not limited to sexual harassment cases)). This Court need not decide whether sexual harassment is a "critical component" of a Title IX claim, because Workman's deliberate indifference claim cannot survive summary judgment even absent that requirement.

In order to establish a prima facie case of deliberate indifference under Title IX, Workman must show that: 1) she was subject to discrimination; 2) she provided actual notice to an official at the university with authority to take corrective action; and 3) the institution's response was

deliberately indifferent. *See Johnson v. Galen Health Inst., Inc.*, 267 F. Supp. 2d 679, 684 (W.D. Ky. 2003) (prima facie case of deliberate indifference in sexual harassment case) (citations omitted). Workman cannot establish the first element of her prima facie case because the Court has concluded that UA is entitled to judgment as a matter of law on Workman's Title IX claim of pregnancy discrimination. Thus, UA is entitled to summary judgment on her deliberate indifference claim. *See Celotex,* 477 U.S. at 322-23.

Were the Court required to continue its analysis, Workman also fails to establish a genuine issue of material fact with respect to the third element of a prima facie case of deliberate indifference. A defendant is deliberately indifferent when its response, or lack thereof, is "'clearly unreasonable in light of the known circumstances[.]'" *Doe v. Springfield-Clark Career Tech. Center,* No. 3:14-cv-00046, 2015 WL 5729327, at *7 (S.D. Ohio Sept. 30, 2015) (quoting *McCoy v. Bd. of Educ., Columbus City Schs.,* 515 F. App'x 387, 391-92 (Table) (citing *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 648, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999))); *Doe by Pahssen v. Merrill Cmty. Sch. Dist.*, No. 08-11539-BC, 2009 WL 10674325, at *13 (E.D. Mich. Dec. 17, 2009), *aff'd sub nom. Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356 (6th Cir. 2012), (citing *Davis*, 526 U.S. at 648).

After failing her oral examination in July 2015, Workman raised her concerns about pregnancy discrimination with Gordon[11] and UA's Title IX[12] office, and UA's Equal Employment Opportunity and Affirmative Action ("EEO/AA") office instituted an investigation after receiving a letter from Workman's attorney in September 2015. (Mot. at 296-98.) Workman offers no

---

[11] The parties dispute whether Workman adequately raised pregnancy discrimination with Gordon.

[12] With respect to Workman's contact with the Title IX office, she asked general questions but provided no specific details and did not further follow-up with that office. (Workman Dep. at 1960-64.)

evidence that before raising these complaints, she ever complained to any of the five faculty members in the Program, or anyone at the university, that she was being discriminated against due to her pregnancy. (Workman Dep. at 1903-04; 1934-35; *see also* Jordan Dec. ¶ 37, Boyle Dec. ¶ 60, Katafiasz Dec. ¶ 40, Tefteller Dec. ¶ 19.)

Workman's opposition to UA's motion regarding her deliberate indifference claim focuses entirely on Gordon's response to her complaint, which she views as inadequate. She entirely ignores, however, the investigation conducted by UA's EEO/AA office, and does not dispute the evidence advanced by UA that its EEO/AA office conducted a timely, thorough, and responsive investigation. (*See* Jordan Dec. ¶ 39; Boyle Dec. ¶ 61; Katafiasz Dec. ¶ 53; Gordon Dec. ¶ 12; Doc. No. 44-9 (Declaration of Daniel Nicolas ["Nicolas Dec."]) ¶¶ 4-8; Doc. No. 44-48; Workman Dep. at 1967; 1987-90). Thus, even if Gordon's response to Workman's complaint was inadequate, a reasonable jury could not conclude from the undisputed evidence that UA's EEO/AA investigation was unreasonable under the circumstances and deliberately indifferent to Workman's discrimination claims. *See Springfield-Clark Career Tech. Ctr.*, 2015 WL 5729327, at *5.

Accordingly, to the extent that Workman has asserted a viable deliberate indifference claim under Title IX, UA is entitled to summary judgment on that claim.

## III. CONCLUSION

For all of the foregoing reasons, UA's motion for summary judgment is granted. This case is dismissed and closed.

**IT IS SO ORDERED**.

Dated: December 11, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**